NO. COA13-893

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

THOMAS JEFFERSON CLASSICAL ACADEMY
CHARTER SCHOOL, PIEDMONT COMMUNITY
CHARTER SCHOOL AND LINCOLN CHARTER
SCHOOL,
    Plaintiffs,

    v.                                        Cleveland County
                                          No.  12 CVS 41

CLEVELAND COUNTY BOARD OF
EDUCATION, D/B/A CLEVELAND COUNTY
SCHOOLS,
    Defendant.


Appeal by defendant from Judgment entered on or about 13 February 2013 and Order and Judgment entered 2 April 2013 by Judge Jesse B. Caldwell III, in Superior Court, Cleveland County.  Heard in the Court of Appeals 23 January 2014.


    *Robinson Bradshaw & Hinson, P.A., by Richard A. Vinroot and Matthew F. Tilley, for plaintiffs-appellees.*

    *Tharrington Smith, L.L.P., by Deborah R. Stagner, for defendant-appellant.*

    *Allison B. Schafer and Christine T. Scheef for N.C. School Boards Association, for amicus curiae.*


STROUD, Judge.


The Cleveland County Board of Education, d/b/a Cleveland County Schools ("CCS" or "defendant"), appeals from the judgment

entered by the trial court on or about 13 February 2013, wherein it concluded that certain funds that CCS had placed in Fund 8 should have been placed into the local current expense fund and distributed on a *pro rata* basis to the plaintiff charter schools. CCS also appeals from an order awarding plaintiffs attorneys' fees. We remand to allow the trial court to apply the correct legal standard. We reverse the trial court's order awarding attorneys' fees.

## I. Background

On 9 January 2012, Thomas Jefferson Classical Academy Charter School, Piedmont Community Charter School, and Lincoln Charter School ("plaintiffs") filed a complaint in superior court, Cleveland County, alleging that CCS had failed to pay them the proper per-pupil amount required by statute. Plaintiffs specifically contended that CCS wrongfully moved approximately $4.9 million from the local current expense fund, which must be shared with the charter schools, to a "special revenue fund," which is not shared. Plaintiffs alleged that they were owed approximately $102,480. Plaintiffs sought a declaratory judgment that CCS must allocate the funds as plaintiffs contended the statute required, recovery in the amount of $102,480, and attorneys' fees under N.C. Gen. Stat. § 6-19.1. CCS answered,

denying that their transfer of the funds to the special revenue fund violated any of the applicable statutes and that plaintiffs were owed anything.

The case was tried by the superior court sitting without a jury. The parties each presented evidence to support their claims. Plaintiffs primarily relied on the testimony of David Lee, financial director for CCS. Mr. Lee prepared an audit report of CCS' finances, which used various state budget codes for different revenue sources. Many of the funding sources that CCS had placed in the special revenue fund were classified by Mr. Lee as "unrestricted." Defendant presented a number of witnesses who administered various programs within the CCS system who testified about their funding sources and the use of those funds. After two days of testimony, the trial court took the matter under advisement.

The trial court entered its judgment on 21 February 2013, wherein it found that defendant had misappropriated approximately $2,781,281 that should have been placed in the current expense fund rather than the special revenue fund. It found that Mr. Lee had admitted that $2,109,377 of the funds, called "Column A," were "unrestricted." It further found, based on Mr. Lee's testimony and that of the other CCS administrators,

that $671,904 of the funds, listed under "Column B" and "Column C" were "(a) part of 'moneys made available to CCS for its 'current operating expenses, (b) used by CCS to operate its general K-12 programs and activities, and (c) not restricted to purposes outside CCS's general educational programs." It concluded that defendant owed plaintiffs $57,836 collectively and entered judgment against CCS in that amount. Defendant filed written notice of appeal from the 21 February 2013 judgment on 18 March 2013.

Plaintiffs then filed a petition for attorneys' fees under N.C. Gen. Stat. § 6-19.1(a). The trial court, by order and judgment entered 2 April 2013, granted plaintiffs' petition and awarded them $47,195.90 in attorneys' fees. Defendant filed written notice of appeal from the 2 April 2013 judgment and order on 30 April 2013.

## II. "Restricted" Funds

Defendant argues that the trial court erred in finding that various revenue sources were not "restricted" and concluding that these funds were therefore subject to a per-pupil distribution to the plaintiff charter schools. Recently the Legislature has amended the statute the Judge applied below

clarifying the definition of "restricted" funds, so we remand for the trial court to apply this definition to the facts here.

A.    Standard of Review

> When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. . . . Evidence must support the findings, the findings must support the conclusions of law, and the conclusions of law must support the ensuing judgment.

*Jackson v. Culbreth*, 199 N.C. App. 531, 537, 681 S.E.2d 813, 817 (2009) (citations, quotation marks, and brackets omitted).

B.    Charter School Funding and the Uniform Budget Statute

The allocation of funds between local school administrative units and charter schools is governed by N.C. Gen. Stat. § 115C-238.29H (2009). That statute requires the local school administrative unit to "transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." N.C. Gen. Stat. § 115C-238.29H(b).  This Court has interpreted the phrase "local current expense appropriation" to be "synonymous with the phrase 'local current expense fund' in the School Budget and Fiscal Control Act, N.C.G.S. § 115C-426(e)." *Francine Delany New School for Children, Inc. v. Asheville City Bd. of*

*Educ.*, 150 N.C. App. 338, 347, 563 S.E.2d 92, 98 (2002), *disc. rev. denied*, 356 N.C. 670, 577 S.E.2d 117 (2003). We have further held that charter schools "are entitled to an amount equal to the per pupil amount of all money contained in the local current expense fund." *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 188 N.C. App. 454, 460, 655 S.E.2d 850, 854 (*Sugar Creek I*), *disc. rev. denied*, ___ N.C. ___, 667 S.E.2d 460 (2008). It is immaterial that the school board has earmarked particular funds for a specific purpose if the funds have been deposited in the local current expense fund. *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 360-61, 673 S.E.2d 667, 676 (*Sugar Creek II*) (holding, *inter alia*, that the trial court did not err in concluding that funds designated for students affected by Hurricane Katrina were subject to per-pupil distribution to charter schools because they were placed in the current local expense fund, as opposed to a separate fund), *disc. rev. denied*, 363 N.C. 663, 687 S.E.2d 296 (2009).

The local current expense fund is defined by N.C. Gen. Stat. § 115C-426(e) (2009):

> The local current expense fund shall include appropriations sufficient, when added to appropriations from the State Public School Fund, for the current operating expense of

> the public school system in conformity with the educational goals and policies of the State and the local board of education, within the financial resources and consistent with the fiscal policies of the board of county commissioners. These appropriations shall be funded by revenues accruing to the local school administrative unit by virtue of Article IX, Sec. 7 of the Constitution, moneys made available to the local school administrative unit by the board of county commissioners, supplemental taxes levied by or on behalf of the local school administrative unit pursuant to a local act or G.S. 115C-501 to 115C-511, State money disbursed directly to the local school administrative unit, and other moneys made available or accruing to the local school administrative unit for the current operating expenses of the public school system.

N.C. Gen. Stat. § 115C-426(c) also permits the creation of "other funds . . . to account for trust funds, federal grants restricted as to use, and special programs." Thus, we have held that "the provisions of Chapter 115C . . . do not require that all monies provided to the local administrative unit be placed into the 'local current expense fund' (Fund Two)." *Thomas Jefferson Classical Academy v. Rutherford County Bd. of Educ.*, 215 N.C. App. 530, 543, 715 S.E.2d 625, 633 (2011) (*Thomas Jefferson I*), *disc. rev. denied and app. dismissed*, ___ N.C. ___, 724 S.E.2d 531 (2012). "Restricted funds" kept in a fund separate from the local current expense fund are exempt from per-

pupil distribution to the charter schools. *Id.* at ___, 715 S.E.2d at 630 ("[I]f funds are placed in the 'local current expense fund' and not held in a 'special fund,' they must be considered as being part of the 'local current expense fund' used to determine the *pro rata* share due to the charter schools."). The local school board has the authority to place such restricted funds in a separate fund. *Id.* at ___, 715 S.E.2d at 634 ("*Sugar Creek I* and *II* clearly indicate that it is incumbent upon the local administrative unit to place restricted funds into a separate fund."); *Sugar Creek I*, 188 N.C. App. at 460-61, 655 S.E.2d at 855. However, we have never defined what "restricted funds" are or who has the authority to make that determination.

Thus, there are two fundamental questions we must address here: (1) does the local school board have discretionary authority to allocate funds into the local current expense fund or a separate fund as it sees fit?; and if not, (2) did defendant here properly classify the funds at issue as restricted?

N.C. Gen. Stat. § 115C-426(e) states that the local current expense fund

> *shall* be funded by revenues accruing to the local school administrative unit by virtue of Article IX, Sec. 7 of the Constitution, moneys made available to the local school

administrative unit by the board of county commissioners, supplemental taxes levied by or on behalf of the local school administrative unit pursuant to a local act or G.S. 115C-501 to 115C-511, State money disbursed directly to the local school administrative unit, and other moneys made available or accruing to the local school administrative unit for the current operating expenses of the public school system.

"It is well established that the word 'shall' is generally imperative or mandatory." *Chandler ex rel. Harris v. Atlantic Scrap & Processing*, ___ N.C. App. ___, ___, 720 S.E.2d 745, 750 (2011) (citation and quotation marks omitted), *aff'd and remanded*, ___ N.C. ___, 749 S.E.2d 278 (2013). Consistent with this Court's decisions in *Sugar Creek I*, *Sugar Creek II*, and *Thomas Jefferson I*, as well as the plain language of N.C. Gen. Stat. § 115C-426(e), we conclude that the local school administrative unit may deposit any "restricted" funds into a fund separate from the current expense fund. *See Thomas Jefferson I*, 215 N.C. App. at 544, 715 S.E.2d at 634; *Sugar Creek I*, 188 N.C. App. at 460, 655 S.E.2d at 855. By contrast, any funds covered by N.C. Gen. Stat. § 115C-426(e) must be deposited into the local current expense fund. We further conclude that the determination of which funds may be placed in a separate fund is not solely in the discretion of the local

school board, given the mandatory language found in the budget statute. *See Chandler*, ___ N.C. App. at ___, 720 S.E.2d at 750 (holding that the Industrial Commission has no discretion in determining an interest award when the relevant statute employed the word "shall").

C.    Defining "restricted" funds

"Restricted" is not a term found in any of the relevant statutes. Rather, it is a gloss this Court has put on the statutory definitions found in N.C. Gen. Stat. § 115C-426(c). It was the Court's shorthand for those monies that can be placed in a separate fund, i.e. those from "trust funds, federal grants restricted as to use, and special programs" which must be accounted for separately.  N.C. Gen. Stat. § 115C-426(c).

The guidance from the Department of Public Instruction that we reviewed in *Thomas Jefferson I* indicated that Fund 8 was a new, separate fund "to separately maintain funds that are restricted in purpose and not intended for the general K-12 population in the LEA." *Thomas Jefferson I*, 215 N.C. App. at 537, 715 S.E.2d at 630.  Such funds included:

> (a) State funds that are provided for a targeted non-K-12 constituency such as More-at-Four funds;

> (b)  Funds targeted for a specific, limited purpose, such as a trust fund for a specific school within the LEA;
>
> (c)  Federal or other funds not intended for the general K-12 instructional population, or a sub-group within that population, such as funds for a pilot program;
>
> (d)  Indirect cost, such as those associated with a federal grant that represent reimbursement for cost previously incurred by the LEA.

*Id.*

After the extensive litigation over the definition of "restricted" and "unrestricted" funds, the Legislature passed an amendment to N.C. Gen. Stat. § 115C-426 in 2010 and again in 2013. N.C. Sess. Laws 2010-31, § 7.17(a); N.C. Sess. Laws 2013-355, § 2(a).  The statute now clarifies that:

> other funds may be used to account for reimbursements, including indirect costs, fees for actual costs, tuition, sales tax revenues distributed using the ad valorem method pursuant to G.S. 105-472(b)(2), sales tax refunds, gifts and grants restricted as to use, trust funds, federal appropriations made directly to local school administrative units, and funds received for prekindergarten programs. In addition, the appropriation or use of fund balance or interest income by a local school administrative unit shall not be construed as a local current expense appropriation included as a part of the local current expense fund.

N.C. Gen. Stat. § 115C-426 (c) (2013).

> In construing a statute with reference to an amendment it is presumed that the legislature intended either (a) to change the substance of the original act, or (b) to clarify the meaning of it. A clarifying amendment, unlike an altering amendment, is one that does not change the substance of the law but instead gives further insight into the way in which the legislature intended the law to apply from its original enactment.

*Ray v. North Carolina Dept. of Transp.*, 366 N.C. 1, 8-9, 727 S.E.2d 675, 681 (2012) (citation and quotation marks omitted).

The 2010 amendment to § 115C-426 is fully consistent with the 2009 definition of "restricted" funds used by the Department of Public Instruction that we approved of in *Thomas Jefferson I* and with this Court's gloss on that statute. *See Thomas Jefferson I*, 215 N.C. App. at 537, 715 S.E.2d at 630. In addition to being consistent with the prior case law, the amendment simply provided a more complete description of the funds which may be excluded from the local current expense fund. "To determine whether the amendment clarifies the prior law or alters it requires a careful comparison of the original and amended statutes. If the statute initially fails expressly to address a particular point but addresses it after the amendment, the amendment is more likely to be clarifying than altering." *Ray*, 366 N.C. at 10, 727 S.E.2d at 682. Therefore, we conclude

that the 2010 amendments were clarifying amendments rather than substantive changes. *See id.* at 11, 727 S.E.2d at 683 (concluding that an amendment was a clarifying one "[b]ecause the legislature left essentially all our pre-amendment cases intact"). "[S]uch amendments apply to all cases pending before the courts when the amendment is adopted, regardless of whether the underlying claim arose before or after the effective date of the amendment." *Id.* at 9, 727 S.E.2d at 681.

It is not clear what definition of "restricted" the trial court applied, but it is clear that the definition used was not that laid out by the 2010 amendments. In some instances it followed the budget code assigned by Mr. Lee, but not in others. It considered some reimbursements "restricted," but others "unrestricted." Even some pre-K programs were considered "unrestricted."

The clarifying amendments provide the proper standard with which to determine whether funds are "restricted." "Restricted" funds, i.e., monies that may be properly placed in a fund separate from the local current expense fund, are those that fall into one of the categories mentioned in N.C. Gen. Stat. § 115C-426(c) as amended. It is clear that the trial court did not apply this standard. We therefore remand to allow the trial

court to make appropriate findings of fact and to determine whether the funds at issues are "restricted" under the correct standard of law. *See Powe v. Centerpoint Human Services*, 215 N.C. App. 395, 396, 715 S.E.2d 296, 298 (2011) (remanding for the fact finder to apply the correct legal standard).

On remand, the trial court should make findings about whether the funds at issue here are "reimbursements, including indirect costs, fees for actual costs, tuition, sales tax revenues distributed using the ad valorem method pursuant to G.S. 105-472(b)(2), sales tax refunds, gifts and grants restricted as to use, trust funds, federal appropriations made directly to local school administrative units, [or] funds received for prekindergarten programs." N.C. Gen. Stat. § 115C-426(c) (2013). If the funds fall into any of these categories, they may be properly considered "restricted," placed into a separate fund, and not shared on a *pro rata* basis with the charter schools. *See Thomas Jefferson I*, 215 N.C. App. at 544, 715 S.E.2d at 633.

### III. Attorneys' Fees

Defendant next argues that the trial court erred in awarding plaintiff attorneys' fees under N.C. Gen. Stat. § 6-

19.1 because a local school board is not a state agency. We agree.

N.C. Gen. Stat. § 6-19.1 (2011) allows the trial court to award attorney's fees to a party prevailing over a state agency in a civil action. This Court has held that the definition of "agency" for the purposes of § 6-19.1 is the same as the definition of an "agency" under the Administrative Procedures Act (APA). *Izydore v. City of Durham (Durham Bd. of Adjustment)*, ___ N.C. App. ___, ___, 746 S.E.2d 324, 326, *disc. rev. denied*, ___ N.C. ___, 749 S.E.2d 851 (2013). The APA defines an "agency" as

> an agency or an officer in the executive branch of the government of this State and includes the Council of State, the Governor's Office, a board, a commission, a department, a division, a council, and any other unit of government in the executive branch. *A local unit of government is not an agency.*

N.C. Gen. Stat. § 150B-2(1a) (2011) (emphasis added). Accordingly, we have held that local governmental units, like municipalities and counties, are not subject to the attorney's fees provisions of N.C. Gen. Stat. § 6-19.1. *Izydore*, ___ N.C. App. at ___, 746 S.E.2d at 326 (holding that "local governmental units—such as respondents—are not 'agencies' for purposes of § 6-19.1."). Local school boards and local school administrative

units are local governmental units, and, as such, are not "agencies" for the purpose of the APA. *See* N.C. Gen. Stat. § 115C-5(5)-(6) (defining "local school board" as "a city board of education, county board of education, or a city-county board of education" and a "local school administrative unit" as "a subdivision of the public school system which is governed by a local board of education. It may be a city school administrative unit, a county school administrative unit, or a city-county school administrative unit."); *Coomer v. Lee County Bd. of Educ.*, ___ N.C. App. ___, ___, 723 S.E.2d 802, 803 (observing that "local boards of education are generally excluded from the requirements of the APA."), *disc. rev dismissed*, 366 N.C. 238, 731 S.E.2d 427, *disc. rev. denied*, 366 N.C. 238, 731 S.E.2d 428 (2012).

Plaintiffs contend that the local school boards are subject to § 6-19.1 because we have held that they "are deemed agents of the State for purposes of providing public education." *Kiddie Korner Day Schools, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 55 N.C. App. 134, 140, 285 S.E.2d 110, 114 (1981), *app. dismissed and disc. rev. denied*, 305 N.C. 300, 291 S.E.2d 150 (1982). Yet, our Supreme Court has noted that "[a]n agent of the State and a state agency are fundamentally different . . . ."

*Meyer v. Walls*, 347 N.C. 97, 107, 489 S.E.2d 880, 885 (1997); *see also Green v. Kearney*, 203 N.C. App. 260, 272, 690 S.E.2d 755, 764 (2010) (noting the distinction between a state agent and a state agency). In that same opinion, the Supreme Court quoted a prior opinion for the proposition that "[i]n no sense may we consider the [Local] Board of Education in the same category as the State Board of Education . . . ." *Meyer*, 347 N.C. at 106, 489 S.E.2d at 885 (citation and quotation marks omitted). Thus, local school boards are not state agencies for purposes of the APA and N.C. Gen. Stat. § 6-19.1 simply because they may be considered agents of the State in certain circumstances.

We hold that the trial court erred in awarding plaintiff attorney's fees under N.C. Gen. Stat. § 6-19.1 because defendant is not an agency for purposes of that statute. Therefore, we reverse the trial court's order allowing plaintiff's petition for attorneys' fees.

## IV. Conclusion

For the foregoing reasons, we remand for the trial court to enter a revised judgment with appropriate findings of fact and conclusions of law applying the correct standard as laid out in

the 2010 amendments. We reverse the trial court's order awarding plaintiffs attorney's fees.

REVERSED in part; REMANDED.

Judges HUNTER, JR., Robert N. and Judge DILLON concur.